James Joseph **WILKENS**, **Jr.**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 70136.

Court of Criminal Appeals of Texas,
En Banc.

June 10, 1992.

Rehearing Denied Nov. 4, 1992.

548

Gary W. Morgan and Hunter B. Brush, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Michael J. Sandlin, Asst. Dist. Atty., Tyler, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

James Joseph Wilkens, Jr., appellant, was indicted for the offense of capital murder in the shooting deaths of Richard Wood and Larry McMillen, Jr. both having been committed during the same criminal transaction on or about December 27, 1986 in Smith County, Texas. Appellant was convicted and sentenced to death on or about February 18, 1988. This is appellant's direct appeal of this verdict wherein he raises twelve points of error.

Appellant does not raise sufficiency of the evidence, and so a detailed recitation of the facts is not necessary. Briefly, he is accused of going to the home of Richard Wood on December 27, 1986 with a .22 rifle and immediately opening fire on all present. Richard Wood was shot in the face and left dead in his doorway. Sandra Williams, a former girlfriend of appellant's, was shot several times in the front yard while attempting to run from appellant; however, she lived. Larry McMillen, Jr., a four year old child of Sandra Williams, was killed by multiple shots while sitting on the living room sofa. Appellant plead not guilty by reason of insanity. He was examined by two doctors for his mental competency to stand trial and was found competent for purposes of trial.

Appellant's points of error may be categorized into three groupings. Points of error two, three, four, and ten all complain of the testimony at the penalty phase by Drs. Tynus McNeel and Thomas Allen; particularly, on future dangerousness and the State's failure to notify defense in advance that their examinations would be used for future dangerousness, as well as Dr. McNeel's status as an expert.

Points of error five through eight all complain of the admitting of certain photographs of the two victims, all of which appellant alleges were highly prejudicial and inflammatory and had little or no probative value.

Points of error one and nine complain of error in the charge; and points eleven and twelve complain of improper bolstering and of the capital sentencing procedure as it relates to mitigating evidence.

Points two and three pertain to testimony at the penalty phase by Dr. Tynus McNeel and Dr. Thomas Allen about appellant's future dangerousness. Appellant argues that such testimony violated his Fifth Amendment privilege against compelled self-incrimination because neither doctor had informed him of his right to remain silent and that anything he said could be used against him. See *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In point of error four, appellant contends his Sixth Amendment right to counsel was violated by the State's failure to first notify his counsel that the psychiatric and psychological examinations would encompass the issue of future dangerousness upon which McNeel and Allen testified.

Prior to trial appellant's counsel requested that the trial court appoint an expert to examine appellant concerning his competency to stand trial. His motion also stated that appellant suffered from mental diseases and defects in the recent past. In addition, counsel filed a notice of intent to raise the defense of insanity. The trial court appointed McNeel to examine appellant on the issues of competency to stand trial and insanity at the time of the offense. Later, the trial court granted counsel's request to appoint Allen to examine appellant on the issue of competency. Again the court's order included a provision ordering

Allen to also examine appellant on the issue of sanity at the time of the offense.

■ Both McNeel and Allen testified for the State in rebuttal during the guilt/innocence phase of trial concerning appellant's sanity. At the punishment phase of trial McNeel and Allen testified for the State that, based upon their examinations of appellant, there was a probability he would commit future acts of violence. Appellant objected to this testimony on the basis that neither McNeel nor Allen had informed him of his right against self-incrimination and that anything he said could be used against him. Appellant did not object that this testimony violated his Sixth Amendment right to counsel. Therefore, appellant has not preserved his contention concerning a violation of his right to counsel. *Spence v. State,* 795 S.W.2d 743 (Tex.Cr.App.1990); *Gardner v. State,* 733 S.W.2d 195 (Tex.Cr. App.1987). See also *Tompkins v. State,* 774 S.W.2d 195 (Tex.Cr.App.1987); *Pyles v. State,* 755 S.W.2d 98 (Tex.Cr.App.1988); *Granviel v. State,* 723 S.W.2d 141 (Tex.Cr. App.1986). Point of error four is overruled.

Appellant's claim in points two and three that his Fifth Amendment rights were violated by McNeel's and Allen's testimony at the punishment phase of trial requires a determination of two issues: first, whether appellant waived his Fifth Amendment rights by his assertion of an insanity defense at guilt/innocence phase; and, second, if he did so waive his Fifth Amendment rights as to this psychiatric testimony at the guilt/innocence phase regarding insanity, whether that waiver extends to the punishment phase and the issue of future dangerousness under Article 37.071(b)(2), V.A.C.C.P.

■ The trial court ordered the examinations for competency and insanity at appellant's request. Appellant did not waive his Fifth Amendment privilege merely by requesting appointment of a court-appointed psychiatrist and psychologist and submitting to a competency and sanity examination. *Hernandez v. State,* 805 S.W.2d 409 (Tex.Cr.App.1990); *Powell v. State,* 742 S.W.2d 353 (Tex.Cr.App.1987), vacated and remanded 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988) aff'd 767 S.W.2d 759 (Tex.Cr.App.1989) revs'd 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989); *Battie v. Estelle,* 655 F.2d 692 (5th Cir.1981).

In *Smith* the Supreme Court held that because the defendant was not informed that what he said during the competency examination could be used against him at the punishment phase of trial on the issue of future dangerousness, his Fifth Amendment rights were violated. The Court left open the issue of the admissibility of such compelled testimony in response to a defendant's assertion of the insanity defense or to a defendant's use of psychiatric evidence in his own behalf on the issue of future dangerousness.

■ In *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the Supreme Court addressed the issue left open in *Smith* concerning the State's use of psychiatric testimony for rebuttal purposes when the defendant has initiated the use of psychiatric evidence. In *Buchanan* defense counsel joined with the prosecutor in a motion for involuntary hospitalization of the defendant for treatment of mental illness. At trial the defendant attempted to establish the affirmative defense of "extreme emotional disturbance," relying on psychological reports and letters. In response the prosecutor introduced part of a report made by a doctor concerning his observations about the defendant's mental state when the defendant was involuntarily hospitalized. The defendant objected that this violated his Fifth and Sixth Amendment rights.

Relying on language in *Smith,* the Court stated:

[I]f a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution. [Citations omitted]

*Id.*, 483 U.S. at 422–423, 107 S.Ct. at 2917–2918, 97 L.Ed.2d at 355. The Court noted this report did not describe any statements made by the defendant dealing with the offenses for which he had been charged. The Court concluded that use of such a report for "this limited rebuttal purpose" was not a Fifth Amendment violation. *Id.*, 483 U.S. at 424, 107 S.Ct. at 2918, 97 L.Ed.2d at 356.

The above quoted language in *Buchanan* controls appellant's argument that he had not waived his Fifth Amendment rights at the guilt/innocence phase by introducing evidence in support of his insanity defense. We hold, in accord with *Buchanan*, that it was not a violation of appellant's Fifth Amendment privilege for the State to rebut appellant's presentation of an insanity defense at the guilt/innocence stage with testimony from the experts who had examined appellant on that issue at his request.

▮ Appellant also argues a more narrow basis for finding no waiver of his Fifth Amendment privilege at the guilt/innocence phase despite his presentation of an insanity defense. He relies upon a case from this Court, *Powell v. State*, 742 S.W.2d 353 (Tex.Cr.App.1987), vacated and remanded 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988), aff'd 767 S.W.2d 759 (Tex.Cr.App.1989), revs'd 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989), to argue that he had not waived his Fifth Amendment rights concerning the *expert testimony* at the guilt/innocence phase and thus also not at the punishment phase.

Our original opinion in *Powell* addressed the same issue presented by appellant. That issue is whether a defendant's presentation of evidence in support of an insanity defense waives his Fifth and Sixth Amendment rights concerning psychiatric testimony at the guilt/innocence phase of trial and at the punishment phase.

In *Powell* the defendant's Fifth and Sixth Amendment rights were violated under *Smith* by allowing testimony of psychiatric and psychological examinations without informing him of his *Miranda*[1] rights and without notifying counsel in advance that the examinations would encompass the issue of future dangerousness. The experts were permitted, over objection, to testify for the State in rebuttal at the guilt/innocence phase regarding the issue of insanity, after the defendant had introduced evidence in support of an insanity defense. They also testified at the penalty stage of the trial on the issue of future dangerousness. This Court stated that "once the defendant has argued the affirmative defense of insanity by use of testimony from a mental health expert, the Fifth Amendment privilege accompanying any psychiatric testimony has been waived." *Id.* 742 S.W.2d at 358. We held the defendant had waived both his Fifth and Sixth Amendment rights at the guilt/innocence phase in terms of the State's use of the expert testimony to rebut his defense of insanity; and he also waived those rights at the punishment phase in terms of the State's use of the expert testimony on the issue of future dangerousness.[2]

Appellant attempts to distinguish our original opinion in *Powell* from his case on the basis of language indicating that a defendant must first present evidence of insanity from a mental health expert before

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** The United States Supreme Court disagreed with this Court's analysis of the Fifth and Sixth Amendment violations, stating they were "conflated." The Supreme Court discussed the difference between the Fifth and Sixth Amendment, addressed only the Sixth Amendment violation, and held that evidence of future dangerousness was taken in violation of the defendant's Sixth Amendment right to assistance of counsel. The Court specifically noted that it was not address-

ing the issue of whether a waiver of the right to object to psychiatric testimony at the guilt/innocence phase of a capital murder trial also extends to the sentencing phase. *Powell*, 492 U.S. at 683, n. 2, 109 S.Ct. at 3149, n. 2, 106 L.Ed.2d at 555, n. 2. *This note suggests that this issue of waiver as it relates to the punishment phase issues, based upon a defendant's assertion of an insanity defense is still an open question and was not disposed of by our original opinion in Powell.* (Emphasis added.) See also *id.*, 492 U.S. at 685–686, n. 3, 109 S.Ct. at 3150, n. 3, 106 L.Ed.2d at 557, n. 3.

the State may utilize mental health experts in rebuttal. The distinction is incorrect.

Appellant called several doctors and mental health experts who testified they had determined appellant was mentally ill and had temporarily committed him to Rusk State Hospital a couple of times within a span of one and one-half years before the commission of the offense to two and one-half years before. Based upon this expert evidence, appellant's version of his disadvantaged and troubled background, and the facts leading up to and including the offense, appellant argued to the jury that he had proven he was insane at the time he committed the offense. Appellant argues that because he did not call a mental health expert to specifically testify that he was insane at the time of the offense, the State should not have been permitted to rebut his claim by the use of experts. We do not agree that the State must be so limited.

Appellant presented mental health expert testimony in support of his insanity defense. While the experts did not testify specifically that appellant was insane at the time of the offense, their testimony regarding appellant's mental illness was part of the foundation upon which appellant based his defense. Language in *Powell* did not condition admission of expert testimony in rebuttal on a defendant's expert's statement that a defendant was insane at the time of the offense. "[O]nce the defendant has argued the affirmative defense of insanity by use of testimony from a mental health expert, the Fifth Amendment privilege accompanying any psychiatric testimony has been waived." *Id.*, 742 S.W.2d at 358. In the instant case appellant used expert testimony to support his defense. In this context, even under *Powell*, the State's use of experts in rebuttal was proper. Further, language in *Smith* and *Buchanan* indicates that if a defendant introduces psychiatric evidence in some form, the State may also introduce psychiatric evidence in some form. *Smith*, 451 U.S. at 465–466, 101 S.Ct. at 1874, 68 L.Ed.2d at 370; *Buchanan*, 483 U.S. at 422, 107 S.Ct.

at 2917, 97 L.Ed.2d at 355. Therefore, appellant's Fifth Amendment privilege was not violated at the guilt/innocence phase by the State's use, in rebuttal, of testimony by Allen and McNeel concerning appellant's insanity.

■ This brings us to the more difficult issue of whether appellant's waiver of his Fifth Amendment rights by presentation of evidence in support of an insanity defense at the guilt/innocence phase extends to the experts' testimony concerning future dangerousness at the punishment phase when appellant did not present any such psychiatric testimony at punishment.

■ In *Smith* the Supreme Court stated that a defendant's Fifth Amendment privilege was implicated at the punishment phase on the issue of future dangerousness. 451 U.S. at 466–469, 101 S.Ct. at 1874–1876, 68 L.Ed.2d at 371–373. Future dangerousness is a critical issue and one on which the State has the burden of proof beyond a reasonable doubt. See Article 37.071(b)(2) and (c), V.A.C.C.P. It is an "element" which the State must prove to obtain the death penalty and is an entirely different and separate issue from insanity. Appellant's request and consent to an examination for sanity did not put him on notice that what he said would be used in another context and at another proceeding—the issue of his future dangerousness at the punishment phase. He was not given *Miranda* warnings. Does such lack of notice and lack of waiver by appellant at the punishment phase also violate appellant's Fifth Amendment rights at the punishment phase? Texas and United States Supreme Court cases indicate that it does.

■ In *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App.1969), a non-capital case, this Court explained the relatively new bifurcated trial procedure in which guilt/innocence was a separate proceeding from punishment.[3] We concluded:

> If Article 37.07, V.A.C.C.P., can be interpreted as providing two separate pro-

---

**3.** Although *Brumfield* was a plurality opinion as to rationale, a majority of this Court has embraced the holding. See *Beathard v. State*, 767 S.W.2d 423 (Tex.Cr.App.1989); *Nelson v. State*, 765 S.W.2d 401 (Tex.Cr.App.1989); *Brown v. State*, 617 S.W.2d 234 (Tex.Cr.App.1981).

ceedings then it follows that a defendant's waiver of his privilege against self-incrimination by taking the stand at the guilt stage is limited to that particular proceeding.

*Id.*, at 741. Thus, a defendant has a Fifth Amendment privilege at each phase, the guilt/innocence phase and at the punishment phase.

■ Waiver of that privilege at the guilt/innocence phase does not extend to the punishment phase. See *Beathard v. State*, 767 S.W.2d 423 (Tex.Cr.App.1989), in which we held a defendant in a capital murder trial was entitled to have a "no-adverse inference" instruction given to the jury at the punishment phase when the defendant testified at the guilt/innocence phase but not at punishment phase. See *Brown v. State*, 617 S.W.2d 234 (Tex.Cr.App.1981), in which this Court held a defendant in a non-capital case was entitled to have a "no-adverse inference" instruction given to the jury at the punishment phase even though such instruction had been given at the guilt/innocence phase. *Brown* and *Beathard* are based on the principle that a defendant has a separate and distinct Fifth Amendment privilege against self-incrimination at the punishment phase.

■ These cases together with the recognition in *Smith* of a Fifth Amendment privilege at the punishment phase on the issue of future dangerousness, demonstrate that a defendant has a separate Fifth Amendment privilege at the punishment phase of a capital murder case which is not waived by his testifying at guilt/innocence. Therefore, appellant's waiver of his Fifth Amendment privilege at the guilt/innocence phase concerning psychiatric testimony on the issue of sanity did not carry over to the punishment phase. Under the dictates of *Smith* such psychiatric testimony would not have been admissible at the guilt/innocence phase absent appellant's waiver in that proceeding; likewise, it was not admissible at the punishment phase on the issue of future dangerousness absent some waiver by appellant. See *Hernandez v. State*, 805 S.W.2d 409, 411–412

(Tex.Cr.App.1990); *Griffin v. State*, 665 S.W.2d 762, 769 (Tex.Cr.App.1983).

Three cases from the United States Supreme Court strongly suggest that admission of psychiatric testimony at the punishment phase, in particular concerning the issue of future dangerousness, requires a separate waiver or warning. *Smith* instructs that a defendant must be informed that what he says could be used against him at the punishment phase of a capital murder trial. The Supreme Court noted that if, *upon being adequately warned,* a defendant decided not to answer the doctor's questions, the sanity and competency examinations could still proceed upon the condition that the results could only be used for sanity and competency purposes. The State would have to find some other way to prove future dangerousness. *Id.*, 451 U.S. at 468–469, 101 S.Ct. at 1876, 68 L.Ed.2d at 372–373.

■ In *Buchanan*, the Supreme Court emphasized that the Fifth Amendment was not violated by admission of psychiatric or psychological evidence for a "limited rebuttal purpose." See *id.*, 483 U.S. at 425, n. 21, 107 S.Ct. at 2919, n. 21, 97 L.Ed.2d at 357, n. 21. It therefore follows that when such evidence is admitted to prove one of the special issues upon which the State bears the burden of proof, it will violate the Fifth Amendment unless it is restricted to rebuttal.

Finally, in *Powell*, the Supreme Court discussed the Sixth Amendment violation caused by failure to notify counsel concerning the scope or intended use of the psychiatric examination. The Court then cited *Buchanan* and stated that even if counsel had notice that raising a mental-status defense might open the door to the State's use of psychological evidence in rebuttal, he would not anticipate any other use. The Court stated, "Nothing in *Smith*, or any other decision of this Court, suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of trial." *Id.*, 492 U.S. at 685–686, n. 3, 109 S.Ct. at 3150, n. 3, 106

**554**

L.Ed.2d at 557, n. 3. That is exactly the situation presented in the instant case.

In the instant case the examining doctors did not inform appellant that what he said could be used against him in court and, in particular, at the punishment phase of his trial. His waiver of his Fifth Amendment privilege by presentation of an insanity defense, was limited to that proceeding at the guilt/innocence phase. *Brumfield,* supra. The State could only use the psychiatric testimony in rebuttal at the guilt/innocence phase. See *Buchanan,* supra. The State cannot use an expert who has examined the defendant for sanity and competency to testify to future dangerousness on the basis of that examination absent a defendant's waiver of his Fifth Amendment privilege at the punishment phase.

Although we find appellant waived his Fifth Amendment privilege at the guilt/innocence phase on the issue of sanity, we hold that waiver was limited to the guilt/innocence phase. See *ibid.* Because appellant was not given any warnings as required by *Smith,* his Fifth Amendment privilege against self-incrimination was violated by McNeel and Allen's testimony at the penalty phase concerning his future dangerousness.

McNeel and Allen were the only witnesses to testify for the State at the punishment phase. Given the error in the admission of their testimony, we must determine whether this testimony on the issue of appellant's future dangerousness contributed to the jury's answers to the special issues. Each doctor's specific testimony on appellant's lack of remorse elucidates this point since remorse, or lack of, was a subject matter they addressed only in the punishment phase; it therefore went beyond the issues of sanity and competency which were the sanctioned reasons for the doctors' interviews and subsequent testimony at the guilt/innocence phase.

Both doctors testified based upon their interviews that appellant showed no remorse for his actions. Dr. Allen's relevant testimony stated:

... [W]hen he finds out that he was in fact mentally ill and did something which he ordinarily would not do, ... something that was awful, he expresses grief. He expresses remorse. My concern was that the subject, number one, was lucid while I talked to him, number two, there was no such remorse.... There wasn't one word spoken along those lines.

Dr. McNeel's relevant testimony, in answer to the inquiry of whether during the course of the interview with appellant how he responded to whether he would do this again, stated:

Well, he paused and hesitated for some time, I suppose some thirty seconds as though he was reflecting on it, and finally he said—as I recall, he said, ... 'I guess I wouldn't do it again,' and the went on to discuss some other topic.

The above testimony was a product of the Fifth Amendment privilege violation and should not have been given at the punishment phase. Given the admission of such testimony, it is impossible to conclude that the jury was convinced of appellant's future dangerousness without the aid of same. There being no showing otherwise, we cannot find beyond a reasonable doubt that this expert testimony did not contribute to the jury's answers to the special issues. See *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Accordingly, appellant's conviction is reversed and the cause is remanded to the trial court.

MILLER and WHITE, JJ., dissent.