Antonio SAUCEDA, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–01429–CR.

Court of Appeals of Texas,
Dallas.

June 29, 1993.

Rehearing Denied Aug. 13, 1993.

Arch C. McColl, III, Dallas, for appellant.

Donald Davis, Dallas, for appellee.

Before BAKER, MALONEY and WHITTINGTON, JJ.

## OPINION

BAKER, Justice.

The State charged appellant with illegal investment. A jury found him guilty of the offense. The jury assessed a ten-year sentence and a $50,000 fine. Appellant contends the trial court should have granted a mistrial when the State referred to his failure to testify during the punishment phase. He contends that counsel's arguments and the court's comments impermissibly reduced the State's burden of proof. He also contends the evidence was insufficient to show that he committed the offense of illegal investment. We conclude the evidence is sufficient to support the conviction. However, we find the State's commenting on appellant's failure to testify at the punishment phase is reversible error. We sustain appellant's first point of error. We reverse the trial court's judgment. We remand the cause to the trial court for a new punishment hearing.

### THE BUY–BUST STING

A confidential informant told Dallas narcotics officers that he knew appellant wanted to buy a kilo of cocaine. One of the narcotics officers instructed the informant to tell appellant a kilo was available and the price was $18,500. As part of the deal, appellant insisted he would deal only with Hispanics. Appellant wanted no white or black participants involved. The narcotics team borrowed a Hispanic detective from another team to meet appellant's requirement. This officer called appellant. The officer and appellant agreed on the purchase of one kilo for $18,500.

The informant, the Hispanic officer, and a third officer went to the agreed place to close the deal with appellant. Appellant arrived and parked close to the officer's car. The informant and the Hispanic officer got out of their car and went to appellant's car.

Appellant said he "had it." Appellant showed the officer a brown paper sack with a large amount of cash in it. The officer looked at the money. The officer said, "I'll get it [the kilo] out of my trunk." The

officer went to the car, took out a fake kilo of cocaine from the car, and showed it to appellant. Appellant appeared to understand what was shown to him. Appellant waved the officer back to appellant's car as if to complete the transaction. The arrest team moved in and arrested appellant.

Appellant testified at the guilt-innocence phase of the trial. He admitted raising the money with intent to buy the kilo of cocaine. However, he said he changed his mind and decided not to go through with the deal when he saw the Hispanic officer was not alone. Appellant testified that when the officer went back to the car to exhibit the alleged kilo of cocaine, appellant said to the informant, "It's off."

The informant said he never heard appellant say he did not want to go through with the deal. The officer said appellant did not say anything about calling off the deal. Appellant only waved the officer back to his car when the officer displayed the fake kilo of cocaine from a distance.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

■ When we review a sufficiency of the evidence complaint, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The fact finder is the sole judge of the witnesses' credibility and the weight given their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The fact finder may accept or reject all or any part of any witness's testimony. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The fact finder need not believe even uncontroverted testimony. *See Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Crim.App.1978).

### B. The Applicable Law

The Texas Health and Safety Code provides:

(a) a person commits an offense if the person knowingly or intentionally:

(2) finances or invests funds he knows or believes are intended to further a commission of an offense listed in Subdivision (1).

TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon 1992); *Jordan v. State,* 816 S.W.2d 89, 91 (Tex.Crim.App.1991).

The Code does not define the terms "finance" or "invest." We apply the rules of grammar and common usage to determine their meaning. *See* TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988). Webster's defines "finance" as "to raise or provide funds or capital for" or "to furnish with necessary funds." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 851 (1981). Webster's defines "invest" as "to commit [money] in order to earn a financial return." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1189 (1981); *see also Jordan,* 816 S.W.2d at 92.

■ Illegal investment requires only an intent to "finance" or "invest." *Rezapour v. State,* 817 S.W.2d 67, 69 (Tex.Crim.App. 1991); *Jordan,* 816 S.W.2d at 92. There is no requirement of an actual transfer of funds to sustain a conviction for illegal investment. *Rezapour,* 817 S.W.2d at 69; *Jordan,* 816 S.W.2d at 92. It is enough if the funds were both present at the scene of the crime and displayed for the express purpose of purchasing the contraband. *Rezapour,* 817 S.W.2d at 69; *Jordan,* 816 S.W.2d at 92.

### C. The Parties' Contentions

#### 1. Appellant's Contentions

■ Appellant argues that showing up with the money is not enough. He contends the evidence fell short of showing that he brought the money and made it available to buy the cocaine. He argues that because he said the deal was off before the arrest, the offense was not complete. He denies having any intent to invest money in cocaine when the officers

arrested him. He argues that even if the jury disbelieved his statement that the deal was off, his actions in showing the money and waving the informant over to his vehicle were as consistent with his stated purpose of informing them he was not buying the cocaine as they were with his purpose of buying the cocaine. He concludes that because of these ambiguous circumstances, no reasonable trier of fact could find that he manifested the required intent at the time of the transaction.

### 2. The State's Contentions

The State argues that all that is necessary to complete the offense of illegal investment was that appellant gather the money with which he intended to make the cocaine buy. The State argues the offense was complete even before appellant and the officers met at the parking lot to complete the deal. The State contends appellant had already gathered the purchase money and by his own admission stated he intended to buy a kilo of cocaine with the money.

### D. Application of Law to the Facts

Appellant testified at the guilt-innocence phase of the trial. He sought out the informant to purchase a kilo of cocaine. He planned to immediately resell the cocaine and make a quick profit. Appellant was using his life savings to purchase the cocaine. He agreed with the informant to meet the informant and the seller of the cocaine at a parking lot to complete the deal. Appellant agreed to pay $18,500 for the kilo. Appellant insisted that he would close the deal only if he met with a Hispanic. Appellant went to the agreed location for the purchase.

The informant and the Hispanic officer met appellant at the parking lot as agreed. Both looked into appellant's car. Appellant showed them a brown paper bag that had a large sum of cash in it. He told the informant and the officer he "had it." The officer went to the other car to get the fake kilo of cocaine. He got the kilo out and displayed it to appellant. Appellant appeared to understand what was being shown to him. Appellant waved the officer back to appellant's car as if to complete the transaction.

Appellant said that when the officer showed him the fake kilo of cocaine, he said, "The deal is off." Both the officer and the informant said appellant did not call the deal off.

We disagree with both appellant's and the State's contentions. To commit the offense of illegal investment, a person must: (1) knowingly or intentionally finance or invest funds; or (2) know or believe the funds are intended to further the commission of an offense proscribed by the Texas Health and Safety Code. See TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon 1992); Jordan, 816 S.W.2d at 91. There is no requirement of an actual transfer of funds to sustain a conviction for illegal investment. Rezapour, 817 S.W.2d at 69. It is enough that the funds are both present at the scene of the crime and displayed for the express purpose of purchasing the contraband. Rezapour, 817 S.W.2d at 69; Jordan, 816 S.W.2d at 92.

Appellant agreed to buy one kilo of cocaine for $18,500. He knew and believed the funds were intended to purchase cocaine. Appellant went to the parking lot with the express intention of investing his life savings in the purchase of one kilo of cocaine. He displayed the money to the informant and the officer for the express purpose of buying the cocaine. The record shows the funds were both present at the scene of the crime and displayed with the express purpose of purchasing the cocaine. Rezapour, 817 S.W.2d at 69.

Appellant claims he changed his mind at the last instant. However, the jury was free to believe or disbelieve his testimony and accept the testimony of the informant and the officer. Sharp, 707 S.W.2d at 614. This Court may not revisit that credibility determination. See Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We conclude the evidence is sufficient for any rational trier of fact to have found the essential elements of the offense. Turner, 805 S.W.2d at 427. We overrule appellant's third point of error.

## THE IMPROPER JURY ARGUMENT

Appellant testified at the guilt-innocence phase of the trial but not at the punishment hearing. During the State's closing argument at the punishment phase of the trial, the following occurred:

[PROSECUTOR]: Did he [appellant] once express any sorrow to you for what he had done? Did he say, I knew it was terrible. I should not have been doing it? No, I asked him that.

[DEFENSE COUNSEL]: I'll object.

[PROSECUTOR]: He knew it was illegal.

[DEFENSE COUNSEL]: I object to that. Number one, that question wasn't asked. Number two, that steps all over his right to remain silent.

[THE COURT]: I sustain the objection.

[DEFENSE COUNSEL]: I would ask you to instruct the jury to disregard that.

[THE COURT]: I'm looking right at a case on it.

[PROSECUTOR]: Your Honor, I'm discussing the testimony from the guilt or innocence phase.

[THE COURT]: I understand. That comment, the jury is to disregard it.

[DEFENSE COUNSEL]: Respectfully ask for mistrial.

[THE COURT]: Deny your motion for mistrial.

[PROSECUTOR]: Ladies and Gentlemen, I am specifically referring to the guilt or innocence stage because you can consider that testimony, okay. You can consider what happened during the guilt or innocence phase.

[DEFENSE COUNSEL]: Your Honor, he was never asked that question. I'm going to object to it.

[THE COURT]: Ladies and Gentlemen, you heard the testimony. You are governed by the evidence as it was presented and heard by you.

And let's go.

### A. Appellant's Contention

■ Appellant argues the prosecutor's statement was a direct comment on his failure to testify at the punishment phase. He contends the argument called for testimony that only he could have supplied. He contends the argument was a comment on his failure to testify and was harmful. He argues that the trial court's failure to grant a mistrial was reversible error.

### B. The State's Contentions

The State argues that the testimony from the guilt-innocence phase showed that the prosecutor did ask appellant whether he expressed any sorrow for what he had done and that he knew it was terrible. The State asserts that in assessing punishment the jury may consider all the evidence adduced at trial during the guilt-innocence phase. The State argues the prosecutor could sum up the evidence and draw reasonable deductions from the evidence.

The State also contends that when viewed from the jury's standpoint, the implication of the prosecutor's argument does not lead to the conclusion that it referred to appellant's failure to testify at the punishment phase of the trial. The State concludes the court sustained appellant's objection only in an abundance of caution. The State draws this conclusion because of the State's position that the prosecutor's argument only had to do with appellant's testimony at the guilt-innocence phase of the trial.[1]

1. At oral argument, the panel questioned appellant's counsel on whether appellant preserved error on this point. Appellant's counsel did not recall what the record reflected. The reason for this inquiry was the State's quotation from the record when appellant objected to the prosecutor's argument. The State's quotation of the argument indicates that appellant objected on the ground that the prosecutor's argument commented on appellant's right to remain silent and that the trial court sustained the objection. The State's quotation of the record also indicates the trial court instructed the jury to disregard the State's argument as requested by appellant's counsel. The State's quotation from the record also indicates that when appellant's counsel asked for a mistrial, there was no ruling on that request. [See State's brief p. 6]. The State quoted from the record both before and after the trial court's ruling. The State left out only one line—the court's ruling. The State did not respond to the court's question during its part of oral argument. Neither did the State attempt to answer appellant's argument on this question.

## C. Applicable Law

■ Proper jury argument is: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

■ A prosecutor's comment on a defendant's failure to testify offends both the state and federal constitutions as well as Texas statutory law. *See* U.S. CONST. amend. V; TEX.CONST. art. I, § 10; TEX. CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979); *Montoya v. State,* 744 S.W.2d 15, 34 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Owen v. State,* 656 S.W.2d 458, 459 (Tex.Crim.App.1983). The defendant has a Fifth Amendment privilege at both the guilt-innocence and the punishment phases of the trial. *Wilkens v. State,* 847 S.W.2d 547, 553 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993). Waiver of the privilege at the guilt-innocence phase of the trial does not waive the privilege at the punishment phase of the trial. *Wilkens,* 847 S.W.2d at 553; *Brown v. State,* 617 S.W.2d 234, 237 (Tex.Crim.App.1981).

■ To violate the right against self-incrimination, the argument, when viewed from the jury's standpoint, must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Montoya,* 744 S.W.2d at 35. It is not enough that the jury might construe the language as an implied or indirect allusion to the defendant's failure to testify. *Montoya,* 744 S.W.2d at 35.

■ Where the argument points to a lack of evidence that only the defendant personally can supply, the court of criminal appeals has held it to be error. *See Swallow v. State,* 829 S.W.2d 223, 225 (Tex. Crim.App.1992); *Montoya,* 744 S.W.2d at 35; *Owen,* 656 S.W.2d at 459. Testimony about contrition or remorse can only come from the accused and, when offered by witnesses other than the accused, is inadmissable. *Thomas v. State,* 638 S.W.2d 481, 484 (Tex.Crim.App.1982).

The court of criminal appeals has often held that the prohibition against commenting on a defendant's silence at trial is mandatory and thus rarely cured by instruction. TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979). *See Montoya,* 744 S.W.2d at 37; *Owen,* 656 S.W.2d at 459. However, in more recent cases, the court has made it clear that violation of article 38.08 is not automatically reversible error. *See Madden v. State,* 799 S.W.2d 683, 699 n. 28 (Tex.Crim.App.1990). The reviewing court, if it determines the argument is improper, must perform a harm analysis. *See Madden,* 799 S.W.2d at 690.

■ When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the question is whether the trial court erred in denying the mistrial. To determine whether the error is reversible, we consider whether the argument was extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and is thus so inflammatory that instructions to disregard the argument cannot cure its prejudicial effect. *Long,* 823 S.W.2d at 267; *Hernandez v. State,* 819 S.W.2d 806, 820 (Tex.Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). We examine the argument considering the entire record. *Hernandez,* 819 S.W.2d at 820.

After oral argument, we reviewed the record. The record clearly reflects that when appellant's counsel moved for a mistrial, the court denied the relief requested. This Court expresses its concern over this material omission by the State in its brief where the State indicates it is reproducing that part of the record as a quote. Although the State did not assert in its brief that appellant waived this point for failure to get a ruling on his motion for mistrial, the court views this significant omission of a part of the record as a misrepresentation of the facts. This Court cannot and will not condone this type of misrepresentation of the record. This Court admonishes the State for its failure to properly quote from the record and cautions the State to avoid any repetition of this type of conduct.

### D. Application of Law to the Facts

Appellant testified during the guilt-innocence phase of the trial but did not testify during the punishment phase. His theory was that he called the deal off just before his arrest. Therefore, he claims he lacked the necessary intent for illegal investment. The record reflects that during guilt-innocence, the prosecutor did not ask appellant whether he was sorry for what he did or that he knew it was a terrible deed.[2] In answer to a question from the prosecutor, appellant did admit he knew that buying cocaine was illegal.

The State urges it was not error for the State to comment on appellant's failure to express remorse or sorrow because appellant testified at the guilt-innocence stage of the trial. As stated, appellant testified in support of his defensive theory. Acceptance of the State's argument would place an accused in the paradoxical condition of saying, "I am sorry for a crime of which I am not guilty." We believe the jury naturally and necessarily took the prosecutor's remarks as a comment on appellant's failure himself to express remorse and acknowledge his guilt.

In fact, the prosecutor underscored the comment by arguing she was referring to the guilt or innocence stage which could only highlight that appellant did not testify at the punishment phase of the trial. Although the prosecutor's clarifying statement clearly alluded to appellant's testimony at guilt-innocence, it just as clearly alluded to appellant's lack of testimony at the punishment phase. To the extent the comments alluded to the latter stage of the trial they were improper. *See Swallow,* 829 S.W.2d at 226. The State's argument was a direct reference to what the jury had not heard appellant say.

The argument called the jury's attention to the absence of evidence that only appellant's testimony could supply. The comment violated a mandatory Texas statute. *See* TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979). It was so inflammatory that the court's instruction to the jury to

disregard did not cure the error. *See Long,* 823 S.W.2d at 267. We sustain appellant's first point of error.

We reverse the trial court's judgment on the punishment phase of the trial. We remand the cause to the trial court for a new trial on punishment.

---

**2.** Thus, the record does not support the assertion in the State's brief that the prosecutor did

ask appellant the questions that allegedly supported the prosecutor's argument.