OVERSTREET, Judge,
dissenting on applicant’s motion for rehearing.
The majority admits that the procedural history recited in its opinion on original submission was incorrectly stated, and that this Court erroneously denied relief on applicant’s claim in his first habeas corpus application because it was under the mistaken belief that this claim had been raised and decided on direct appeal. Yet it continues to hold that applicant procedurally defaulted his Fifth Amendment Estelle v. Smith claim because he did not raise it on direct appeal. Ex parte Gardner, 959 S.W.2d 189, 199 (Tex.Cr.App.1998).
As on original submission, the majority continues to chastise applicant for not raising this claim on direct appeal. However it is very well-settled that it is appropriate to raise an Estelle v. Smith claim of constitutional magnitude via habeas corpus application even if it was not raised on direct appeal. Ex parte Chambers, 688 S.W.2d 483 (Tex.Cr.App.1984), cert. denied, 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985), and Ex parte Bravo, 702 S.W.2d 189, 192-93 (Tex.Cr.App.1985)(op. on reh’g). Yet the majority insists upon punishing applicant for not raising it on direct appeal. And it was applicant’s lawyer who failed to raise the claim— must applicant himself now suffer for his appellate counsel’s failure?
We granted applicant’s motion for rehearing on issues to reconsider the propriety of our holdings on original submission; yet we simply reaffirm one of our original holdings, i.e. that applicant procedurally defaulted his current claim by not raising it on direct appeal. With such a resolution, one has to wonder why we even bothered to grant rehearing in the first place?
As noted above, long-standing precedent provides for raising such an Estelle v. Smith claim for the first time via habeas corpus application in spite of not having raised it on direct appeal. Though applicant, via his appellate attorney, certainly could have sought to supplement his brief on direct appeal to add this current claim, there was nothing requiring him to do so. In fact, the caselaw approving the propriety of raising such claims via habeas corpus application could be seen as encouraging his attorney to do so; or at least such would not provide any inkling that he would later be punished and held to have procedurally defaulted the claim for doing so. Yet now, he is being punished for following that caselaw. It seems totally inappropriate to suddenly change the rules midstream to penalize applicant even though he used the habeas corpus process that has been held to be the proper vehicle ever since Estelle v. Smith was promulgated.
And since we granted rehearing on applicant’s motion on a claim as to the merits, i.e. “The admission of Dr. Griffith’s testimony at the punishment phase of trial violated [applicants rights under the Fifth Amendment[,]” I will briefly address the merits of the claim. As on original submission, applicant avers that because of deficient warnings, Dr. Griffith’s testimony at punishment violated applicant’s rights under the Fifth Amendment of the United States Constitution.
During trial, Dr. Griffith described the warnings given to applicant in the following manner:
First of all, we did inform the Defendant, which he knew already that — what he was coming for, for a psychiatric examination; that this was ordered by Judge Hopkins. We informed him that a report would have to be sent to the Court stating our findings *202 so far as whether he was competent to stand trial, whether he, in our opinion, was sane or insane at the time of the alleged offense; that in the State of Texas, there is no confidentiality so that anything he might say could be used against him, or could be used for him at some later date in the courtroom ... [t]hat he had the right to remain silent, and was informed that he had the right to talk with his attorney about this, which he had done.
Applicant complains that the warnings given were deficient under Estelle v. Smith. In Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex.Cr.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), this Court discussed the warnings which must be given to comply with the mandate of Estelle v. Smith. There it was stated:
Before any such psychiatric interview, the defendant’s Fifth Amendment rights should be protected by warnings intended to serve as “procedural safeguards effective to secure the privilege against self-incrimination.” [citations omitted] Such warnings should inform the defendant that he has the right to remain silent and that his statements may later be used against him in court; if the defendant faces capital charges, this warning should specifically inform him that his statements could be used against him at the punishment stage of his capital murder trial. [Emphasis added.]
Likewise, in Wilkens v. State, 847 S.W.2d 547, 553 (Tex.Cr.App.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993), this Court stated:
Three cases from the United States Supreme Court strongly suggest that admission of psychiatric testimony at the punishment phase, in particular concerning the issue of future dangerousness, requires a separate waiver or warning. Smith instructs that a defendant must be informed• that what he says could be used against him at the punishment phase of a capital murder trial. [Emphasis added.]
Because the examining doctors did not inform Wilkens that what he said could be used against him at the punishment phase of his trial, his Fifth Amendment privilege against self-incrimination was violated by the doctor’s testimony at punishment concerning his future dangerousness. Wilkens, supra, 847 S.W.2d at 554.
In the instant case, the examining doctors did not inform applicant that what he said could be used against him at the punishment phase of his trial.[1] Therefore, pursuant to this Court’s above-discussed holdings in Hernandez and Wilkens, applicant’s Fifth Amendment privilege against self-incrimination was violated by Dr. Griffith’s testimony at the punishment phase of trial concerning applicant’s future dangerousness.
A waiver of the constitutional right to silence must be made knowing the potential life or death punishment consequences of that waiver. Applicant’s waiver was secured without that requisite information.
*203 Because the majority chooses to continue to castigate applicant because his appellate attorney failed to file a claim on direct appeal that was not even required to be filed on direct appeal, I respectfully dissent.
BAIRD, J., joins.

. The State relies on this Court’s decision in Bennett v. State, 742 S.W.2d 664 (Tex.Cr.App.1987), vacated and remanded, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988), reaffirmed, 766 S.W.2d 227 (Tex.Cr.App.1989), cert. denied, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). In Bennett, Dr. Grigson specifically informed the defendant that the results of the examination "can be used against him[.]” Bennett v. State, 766 S.W.2d at 230. The continued vitality of Bennett is questionable since the more recent decisions of this Court, the United States Fifth Circuit Court of Appeals, and the United States Supreme Court all require that the defendant be specifically warned that the results of the pretrial psychiatric examination can be used against him at the punishment phase of trial. See Vanderbilt v. Collins, 994 F.2d 189, 198 (5th Cir.1993)(examining psychiatrist is obliged to inform the defendant "that the psychiatric examination c[an] be used against him at the sentencing phase on the issue of future dangerousness[.]”) See also Bennett v. Collins, 852 F.Supp. 570, 574 (E.D.Tex.1994)("In one of the stipulations [entered by the parties to the federal habeas corpus proceeding], respondent confessed error in the sentencing phase of [Bennett’s] trial, agreeing that Dr. Grig-son’s testimony violated the standards set forth in Estelle v. Smith, ... [and] [Respondent further stipulated that the error was not harmless....") The federal habeas court in Bennett went on to observe that "[e]ven if respondent- had not confessed error, [it] would have been obligated to grant [Bennett] relief based on [this] [reversible] error” because "Dr. Grigson failed to notify both [Bennett] and his attorney that he would be testifying as to future dangerousness during the sentencing phase." Id. at 574, citing Vanderbilt.