In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-03-494 CR


____________________



JAMES THOMAS SHEFFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law


Polk County, Texas


Trial Court Cause No. 2002-0343






MEMORANDUM OPINION


 James Sheffield was convicted of assault under section 22.01 of the Texas Penal
Code. The trial court sentenced appellant to three hundred sixty days of imprisonment and
a fine of $750. Appellant's sentence was suspended, and he was placed on probation for
twenty-four months. In this appeal, appellant argues the trial court erred in compelling
him to testify during the punishment phase of his trial, and argues he did not receive
effective assistance of counsel.


The Complainant's Testimony


 The complainant testified she had a romantic relationship with appellant. She and
appellant embarked on a weekend camping trip in appellant's truck. She forgot the
directions to the camp, and appellant began getting agitated and angry. Appellant began
"showing out" and pulled the truck off the side of the road and into the ditch. According
to her, appellant started to pull the truck back onto the road, and although another vehicle
was approaching, appellant did not slow down. She was afraid of having an accident. As
he was pulling the truck back onto the road, she reached over, turned off the engine, and
dropped the keys. She testified she might have made physical contact with him during
these events, but she was not certain. She testified that after she dropped the keys, he
pushed her over to the door and struck her in the face and on top of the head with his
hand. Neither she nor appellant was intoxicated at the time.

 She sustained a black eye and had bruises on her neck. Her injuries were painful.
She asked him to take her home, but he refused, and they then pulled over and spent the
night in the back of the truck. They arrived at the campground the next day. When she
awoke, he was touching her facial injuries and grinning. Appellant told her if anyone
asked about her injuries, she was to say she had been hit with a rod and reel. She testified
he warned her several times not to report the incident.

 After returning home, the complainant sought treatment for her injuries at Tyler
County Hospital. The nurse who treated her testified she complained of pain in the right
eye and left ear, and had discoloration in both areas. The nurse stated the complainant's
injuries were consistent with assault, but admitted something else could have caused them. 
The complainant said she went immediately from the hospital to the Polk County Sheriff's
Department, where she was interviewed and photographed. According to the complainant,
she dropped the charges because appellant threatened to harm her and her grandson.

Deputy Hunter's Testimony


 Deputy Gerald Hunter, who interviewed and photographed her, stated her right eye
was black, and her left ear and neck showed signs of trauma. Hunter also stated she told
him she had been assaulted by appellant. He thought her injuries were caused by a punch. 
Deputy Hunter stated he would not have gone forward with the case if he had not believed
complainant was telling him the truth. He testified complainant later told him she wished
to drop the charges because she was afraid for her family.

Appellant's Testimony


 Appellant testified that complainant had been drinking but he had not. According
to appellant, complainant was giving him directions, and they were searching for
landmarks. Appellant says her directions became "really sketchy," and she said "I don't
remember" when he questioned her. She became quiet, and she seemed angry and
agitated. She asked him to pull off the road, and he assumed she had to use the restroom
because she had been drinking. When she exited the truck, she jumped onto the back of
the truck, and they began arguing. 

 According to Appellant, she got back into the truck, and, when he began "revving"
the motor to get out of the ditch, she grabbed the key and pulled it out, causing the steering
wheel to lock. He denied driving recklessly, and stated he had to "rev" the engine to exit
the ditch. He then slammed on the brakes and leaned over to retrieve the keys. When he
hit the brakes, both he and she "went all over the cab," since they were not wearing seat
belts. He retrieved the keys, pulled to the edge of the road, and began yelling at the
complainant. She was crying. He denied hitting her while trying to retrieve the keys. He
thought her injuries were caused either when she bounced around the cab of the truck or
when he pushed her off so he could start the truck. She might have hit the dash. She told
him her black eye was caused by hitting the door lock. The complainant said "my face
hurts," so he turned on the light to see what had happened. When he saw her injuries, he
made an ice pack for her. He says she apologized for what happened. 

 He resumed driving, and they then decided to pull over for the night. They
unloaded the truck, spread sleeping bags in the truck bed, and prepared to go to sleep. 
Appellant testified he was tired and frustrated, but agreed to have sexual relations with the
complainant after she asked him. Appellant denied threatening her or her grandson, and
he denied telling her to lie about how she had been injured. He testified she contacted him
several times after filing charges, came to his house at two or three o'clock in the morning
and called him at work. Appellant testified he ended the relationship with her. He
testified she might have filed charges against him because she was unhappy about owing
him money.

The First Issue -- Was He Compelled?


 In his first issue, appellant argues the trial court erred in compelling him to testify
during the punishment phase of the trial. Appellant elected to have the judge assess his
punishment. During the punishment phase, the assistant district attorney began explaining
on the record an agreed stipulation regarding appellant's prior criminal convictions. The
following exchange between the assistant district attorney, appellant's attorney, appellant,
and the trial court ensued:

 [ASSISTANT DISTRICT ATTORNEY]: Okay. Date of August 30, 1994,
Defendant was convicted for assault, third degree assault, misdemeanor
assault. . . . Offense date of February 28, 1998, Defendant was convicted
of sexual assault of a child, a felony -- these are all in Colorado.


 [THE DEFENDANT]: That is not the correct charge, sir.


 [THE COURT]: What is the correct charge?


 [THE DEFENDANT]: The correct charge was attempted sexual assault.


 [ASSISTANT DISTRICT ATTORNEY]: The criminal history says sexual
assault.


 [THE DEFENDANT]: That's not -


 [ASSISTANT DISTRICT ATTORNEY]: You're stipulating to attempted
sexual assault on a child?


 [THE DEFENDANT]: That's correct.


 [ASSISTANT DISTRICT ATTORNEY]: Looks like a companion case on
a child, sexual assault, pattern of abuse. Another companion case, sexual
assault, position of trust. Offense date December 10, 1998, conviction for
fugitive from another jurisdiction.

 . . . .

 [THE DEFENDANT]: I've never been a fugitive from anywhere.


 [THE COURT]: Why don't we just -


 [DEFENSE COUNSEL]: Your Honor -


 [THE COURT]: -- put your client on, and let us go over what it is, and
cross-examine him. Do you have any objection?


 [THE DEFENDANT]: I'm sorry?


 [THE COURT]: Go back on the stand, and tell us what your record is.


 [THE DEFENDANT]: Yes, sir, I don't have no problem with that. 


Appellant then took the stand and testified he was a registered sex offender, and had been
convicted of misdemeanor assault in a domestic violence situation and attempted sexual
assault of one of his two daughters. Appellant denied having been a fugitive or evading
arrest. He admitted he was currently on felony probation and was in good standing. A criminal defendant possesses the privilege against self-incrimination at both the
guilt-innocence and punishment phases of trial. See Wilkens v. State, 847 S.W.2d 547,
553 (Tex. Crim. App. 1992). See Sauceda v. State, 859 S.W.2d 469, 474 (Tex. App.--Dallas 1993, pet. ref'd). A waiver of the privilege against self-incrimination must be made
knowingly, voluntarily, and intelligently. See Brown v. State, 617 S.W.2d 234, 236 (Tex.
Crim. App. 1981); see also Brumfield v. State, 445 S.W.2d 732, 735 (Tex. Crim. App.
1969). A waiver of the privilege during the guilt-innocence phase does not extend to the
punishment phase. See Carroll v. State, 68 S.W.3d 250, 253 (Tex. App.-- Fort Worth
2002, no pet.) (citing Wilkens, 847 S.W.2d at 553). When the accused voluntarily takes
the stand, the privilege against self-incrimination is waived as to the hearing in which the
waiver occurs. See Hernandez v. State, 506 S.W.2d 884, 886 (Tex. Crim. App. 1974). 
 Appellant testified during the guilt-innocence phase. The record reveals that at the
sentencing phase, appellant, unprompted by the court, began offering an explanation as to
his prior convictions during the presentation of the proposed stipulation. The exchange
demonstrates appellant's statements were voluntary. The trial court's request that appellant
testify from the stand does not change the fact his testimony was voluntary and unsolicited
at its inception. When the trial court made the suggestion, appellant stated he had "no
problem with that." His counsel was present and cross-examined him. Neither appellant
nor his counsel objected when appellant was asked to take the stand. The record is devoid
of support for appellant's contention that he was compelled to testify. To the contrary, the
record reveals appellant was not compelled to testify, but did so voluntarily. Appellant
knowingly, intentionally, and voluntarily waived his privilege against self-incrimination
during the punishment phase of the trial. Appellant's first issue is overruled.

The Second Issue -- Did He Receive Effective Assistance?


 In his second issue, appellant argues he did not receive effective assistance of
counsel because his attorney failed to object to the following evidence: the complainant's
testimony about appellant threatening her and her grandson; Deputy Hunter's testimony
about the complainant's statements to him when she reported the assault; Deputy Hunter's
testimony that he believed the complainant; and appellant's own testimony during the
punishment phase. 

 To prevail on a claim of ineffective assistance of counsel, appellant must satisfy a
two-pronged test:

 First, the defendant must show that counsel's performance was deficient. 
This requires showing that counsel made errors so serious that counsel was
not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Second, the defendant must show that the deficient
performance prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial, a trial
whose result is reliable. 


Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
see also Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Texas courts
have interpreted Strickland to require appellant to show a reasonable probability that, but
for his counsel's errors, the outcome would have been different. See Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's
representation is highly deferential and presumes that counsel's actions fell within the wide
range of reasonable and professional assistance." Id. Appellant must prove there was no
plausible professional reason for specific acts or omissions of his counsel. Id. at 836. 
Furthermore, "[a]ny allegation of ineffectiveness must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness." Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996)). The same standard applies to both guilt-innocence and
punishment. See Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999). 

 When asserting counsel was deficient in failing to object to the admission of
evidence, an appellant must show the evidence was inadmissible. Ortiz v. State, 93
S.W.3d 79, 93 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 998, 123 S.Ct. 1901, 155
L.Ed.2d 824 (2003). The bare record on direct appeal is usually not sufficient to
demonstrate counsel's representation was so deficient as to overcome the presumption 
counsel's conduct was reasonable and professional. Bone, 77 S.W.3d at 833. Appellant
must bring forward a record from which it may be determined that trial counsel's
performance was not based on sound strategy. Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994). Absent a record illuminating counsel's strategy and tactics, an
appellate court cannot know why counsel may have chosen not to object. See Ex parte
Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001).

 Appellant first contends his counsel should have objected to complainant's testimony
that appellant threatened her and her grandson. Appellant characterizes this testimony
solely as evidence of an "extraneous offense," and states the testimony is not admissible
for that purpose. Appellant concedes that an extraneous offense is admissible pursuant to
Rule 404(b) if it is relevant to some material issue other than to show the character of the
actor, but he argues the only possible reason for introducing the evidence was to show
appellant was "in general, a threatening person." See Tex. R. Evid. 403, 404(b). 
However, the complainant's testimony is admissible to show appellant's consciousness of
guilt, and the probative value was not substantially outweighed by Rule 403 factors. See
Peoples v. State, 874 S.W.2d 804, 809 (Tex. App.--Fort Worth 1994, pet ref'd); see Tex.
R. Evid. 403. Appellant has not established his attorney's failure to object to this evidence
fell below acceptable professional standards. See Strickland, 466 U.S. at 687; see also
Ortiz, 93 S.W.3d at 93.

 Appellant further contends his counsel should have objected to Deputy Hunter's
testimony on direct examination that complainant told him she had been assaulted by
appellant. Appellant also contends his counsel should have objected to Deputy Hunter's
testimony on redirect examination that he believed complainant's statement. 

 Assuming trial counsel should have objected to Deputy Hunter's testimony,
appellant has not shown the error was so serious as to deprive him of a fair trial. The
complainant herself testified in detail to the circumstances of the incident. Hunter's
testimony of what she told him was cumulative of evidence properly admitted. Hunter's
testimony on redirect in part defended his investigation, which was questioned on cross-examination. Trial counsel had asked him on cross if there was any way Hunter could
determine whether he was given a true account of what happened. Trial counsel was
essentially making the point that there were no witnesses to the assault, yet the
investigation went forward based on what complainant told the officer. This "opened the
door" to the officer's explanation that he went forward with the investigation because he
believed the complainant. The record contains no evidence from trial counsel as to the
reasons for his trial strategy, and we do not speculate as to counsel's strategy. See Ex
parte Varelas, 45 S.W.3d at 632. In any event, appellant has not shown a reasonable
probability that, but for counsel's failure to object to Hunter's testimony, the result of his
trial would have been different. See Bone, 77 S.W.3d at 833. 

 Appellant's final contention is that his counsel was ineffective because he failed to
object to appellant's own testimony at punishment, which appellant contends violated his
privilege against self-incrimination. A violation of the privilege against self-incrimination
does not require an objection to preserve error. See Johnson v. State, 704 S.W.2d 139,
141 (Tex. App.--Beaumont 1986, pet. ref'd). Regardless, we have concluded appellant
knowingly, intentionally, and voluntarily waived his privilege against self-incrimination. 
The record does not demonstrate counsel's conduct constituted ineffective assistance. 
Appellant's second issue is overruled. 

 The judgment of the trial court is affirmed.

 AFFIRMED. 

 PER CURIAM

Submitted on September 2, 2004

Opinion Delivered October 27, 2004

Do Not Publish

 

Before McKeithen, C.J., Burgess and Gaultney, JJ.