959 S.W.2d 189 (1996)
Ex Parte David Allen GARDNER.
No. 72007.
Court of Criminal Appeals of Texas, En Banc.
December 4, 1996.
Opinion on Rehearing February 4, 1998.
*190 Rita J. Radostitz, Robert C. Owen, Austin, for appellant.
Amy Ayers Adams, District Attorney, Donald E. Schnebly, Assist. District Attorney, Edward D. Lewallen, Assist. District Attorney, Weatherford, Matthew Paul, State's Atty., Austin, for State.
Before the court en banc.

OPINION
McCORMICK, Presiding Judge.
Applicant was convicted of capital murder in 1981 for killing a fourteen-year-old girl in the course of kidnapping her. Gardner v. State, 733 S.W.2d 195, 197-98 (Tex.Cr.App. 1987), cert. denied, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). Applicant received the death penalty at his 1981 trial. Id. In this habeas corpus proceeding, applicant claims the admission of Dr. Griffith's testimony during the punishment phase of applicant's 1981 trial violated Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). This testimony was based on statements applicant made to Dr. Griffith and Dr. Grigson during a pretrial psychiatric examination. We filed and set the application on this allegation.
Applicant claims the warnings he received at this pretrial psychiatric examination failed to comply with Estelle v. Smith because they failed to inform applicant that any statement he made could be used against him at the punishment phase of his capital murder trial. See Estelle, 451 U.S. at 468, 101 S.Ct. at 1875-76 (Fifth Amendment requires, among other things, that a capital murder defendant be warned that any statement he makes during a psychiatric examination may be used against him at the punishment phase of his capital murder trial); Wilkens v. State, 847 S.W.2d 547, 552-554 (Tex.Cr.App.1992); Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex. Cr.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The record from the punishment phase of applicant's 1981 trial reflects Dr. Griffith described the warnings given to applicant in the following manner:
"First of all, we did inform the Defendant, which he knew already thatwhat he was coming for, for a psychiatric examination; that this was ordered by Judge Hopkins. We informed him that a report would have to be sent to the Court stating our findings so far as whether he was competent to stand trial, whether he, in our opinion, was sane or insane at the time of the alleged offense; that in the State of Texas, there is no confidentiality so that anything he might say could be used against him, or could be used for him at some later date in the courtroom ... [T]hat he had the right to remain silent, and he was informed that he had the right to talk with his attorney about this, which he had done."
Attached to the State's reply brief in this habeas corpus proceeding is an affidavit by Dr. Grigson explaining that he and Dr. Griffith interviewed applicant together, and that Dr. Grigson also provided warnings to applicant prior to the interview. Because Dr. Grigson did not testify at applicant's 1981 trial, the trial record is devoid of the warnings he gave to applicant. We, therefore, remanded this case to the trial court for an evidentiary hearing to determine whether any deficiency in the warnings provided by Dr. Griffith was cured by the warnings provided by Dr. Grigson. At this hearing, Dr. Grigson testified he gave applicant the following warnings:
"Well, I felt like the number one warning was that the district attorney is the one that had filed the motion and requested it. I felt like that was extremely important, it was not coming from this defense attorney but from the district attorney who was prosecuting him. Next I told him that it was not confidential because the report would be sent back and it would be discussed. I told him that he did have the *191 right to refuse the examination, he had the right to remain silent, he had the right to stop at any time he wanted to.... And the purpose was to examine him in three areas, competency, sanity, and dangerousness.... I told him dangerousness meant whether or not he represented a continuing threat to society."

I
Applicant committed the offense in 1980. Applicant's case was tried in 1981. Estelle v. Smith also was decided in 1981. This Court disposed of applicant's direct appeal on April 8, 1987, and the United States Supreme Court denied applicant's petition for writ of certiorari on January 17, 1989. Applicant filed his first application for habeas corpus relief in this Court on April 26, 1989. Although this application contained many claims, it did not contain an Estelle v. Smith claim. This Court denied relief on applicant's first writ application on April 28, 1989. Applicant finally got around to raising an Estelle v. Smith claim when he filed a second application for habeas corpus relief on June 13, 1990.[1] He filed this, his third, application for writ of habeas corpus relief on December 20, 1994.
Applicant has not explained why he waited nine years after Estelle v. Smith was decided before first asserting an Estelle v. Smith claim in his second writ application in June 1990. He made no attempt to raise the claim while his direct appeal was pending in this Court even though Estelle had been decided for six years when this Court finally disposed of applicant's direct appeal. Applicant also failed to raise the claim in April 1989 when he filed his first writ application. And, after this Court disposed of applicant's second writ application in March 1992, applicant waited over two years to reassert the claim in this writ application.
Under these circumstances, we hold applicant waived any right he may have had to complain in this proceeding about an Estelle v. Smith violation at his 1981 trial. See Ex parte Carr, 511 S.W.2d 523, 525 (Tex.Cr.App. 1974) (if petitioner has grounds which would justify granting habeas corpus relief, he should present them with dispatch for determination, rather than doling them out one-by-one in repeated attempts to have both the benefits of relief and the fleeting pleasures of harassing those who confine him); cf. Article 11.071, Section 5(a), V.A.C.C.P.; Tex.R.App. Proc. 52(a) (to preserve a complaint for appellate review, the complaining party must, among other things, present a timely request). This case presents a classic example of a capital inmate abusing the writ to delay his execution. See Carr, 511 S.W.2d at 525; compare Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions).
The State's (and society's) valid and legitimate interest in the finality of this fifteen-year-old conviction and death sentence outweighs applicant's interest in raising an Estelle v. Smith claim now especially since this claim does not affect the factual question of applicant's guilt or innocence, the reliability of the jury's findings on the special issues at applicant's 1981 trial, or the voluntary nature of applicant's statements to the psychiatrists. See Ex parte Goodman, 816 S.W.2d 383, 387 (Tex.Cr.App.1991) (Clinton, J., concurring);[2]Black v. State, 816 S.W.2d 350, 375-79 (Tex. Cr.App.1991) (Clinton, J., dissenting); Ex parte Dutchover, 779 S.W.2d 76, 78-79 (Tex. Cr.App.1989) (Clinton, J., concurring); cf. Brecht v. Abrahamson, 507 U.S. 619, 634-39, 113 S.Ct. 1710, 1720-22, 123 L.Ed.2d 353 (1993) (liberal allowance of the writ encourages habeas petitioners to relitigate their claims on collateral review). No one is claiming applicant's statements to the psychiatrists resulted from torture or some other process that overbore applicant's will not to *192 speak. Holding that applicant waived his Estelle v. Smith claim is not a "grievous wrong" in this case. Cf. Brecht, 507 U.S. at 637, 113 S.Ct. at 1721 (historic meaning of habeas corpus is to afford relief to those whom society has "grievously wronged").

II
In addition, Griffith's warnings to applicant were sufficient to comply with Estelle v. Smith. Griffith testified he told applicant that applicant's statements "could be used against him" at some later date "in the courtroom." This sufficiently informed applicant that his statements could be used against him at the punishment stage of his capital murder trial since that went on "in the courtroom." Moreover, a warning that a statement "may be used against" a defendant conveys that that statement could be used at the punishment stage of a capital murder trial. Therefore, we do not even need to consider whether Grigson's warnings cured any deficiencies in the warnings provided by Griffith to conclude applicant's Estelle v. Smith claim is without substantive merit.[3]
And, Grigson also told applicant that he was examining applicant for "dangerousness" which meant "whether or not he represented a continuing threat to society." Taken together, Griffith and Grigson effectively informed applicant that "any statements he made to them could be used against him at the punishment stage of his capital murder trial on the issue of future dangerousness." This more than complies with Estelle v. Smith.
We deny applicant's request for habeas corpus relief.
MEYERS, J., concurs.
MANSFIELD, Judge, concurring.
I believe that, when taken together, the warnings given to applicant substantially complied with the requirements set forth in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). I note specifically applicant was told he had the right to remain silent, he could stop the examination at any time and he could talk to his attorney (which he had done). Furthermore, he was informed the examination would cover three areas, competency, sanity and dangerousness, and "dangerousness" meant whether or not he represented a continuing threat to society. Finally, he was told that anything he might say could be used against him or could be used for him at some later date in the courtroom.
It is my opinion that the intent of Estelle v. Smith is that an individual facing a psychiatric examination ordered by the court, be given the functional equivalent of the warnings that must be provided to an individual in custody before interrogation may commence. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct., 1602, 16 L.Ed.2d 694 (1966). The Supreme Court has held that warnings do not have to be a verbatim recital of the relevant part of Miranda in order to comply with its dictates; equivalent words are sufficient so long as they make clear to the individual his rights thereunder. California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). In other words, substantial compliancenot specific wordingis all that is necessary for a given set of warnings to comply with Miranda.
Similarly, I do not find anything in Estelle v. Smith that mandates the use of specific words in warnings that must be given to an individual facing a court-ordered psychiatric examination regarding future dangerousness. Estelle v. Smith requires he be told he has a right to remain silent, to consult an attorney, and he may terminate the examination at any time. Furthermore, he must be told that anything he says may be used for or against *193 him at trial and that the examination will cover, among other matters, the issue of future dangerousness. The warnings given to applicant by the two psychiatrists, though perhaps not ideal, do substantially comply with these requirements mandated by Estelle v. Smith.
I join the opinion of the Court.
CLINTON, Judge, dissenting.
I have nothing to add to Judge Maloney's treatment of the merits of applicant's Estelle v. Smith claim in this cause, and I join his dissenting opinion.[1] I write further to address the plurality's apparent alternative holding that applicant has "waived" habeas review of the merits of that claim because he has "abused the writ." Along the way the plurality invokes a number of separate opinions I have authored in the last half dozen years on the subject of post-conviction habeas corpus cognizability. See plurality op. at 191. The plurality has misappropriated my purpose.

I.
To begin with, I am puzzled, if the plurality is truly committed to its view that applicant has waived his claim by abusing the writ, why it even proceeds to address the merits of his Estelle v. Smith claim.[2] If applicant has genuinely procedurally defaulted his claim, and we were to dispose of his application on that basis alone, it would insulate our judgment from federal habeas corpus review, unless he could demonstrate "cause and prejudice" in that forum. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). For this Court to proceed to the merits despite noticing a procedural default risks opening up the merits of his claim in federal court. This is so because it might suggest to a federal habeas court that as a matter of state habeas review we will sometimes excuse forfeitures when it comes to federal constitutional error, notwithstanding statements to the contrary in our jurisprudence. See, e.g., Ex parte Crispen, 777 S.W.2d 103 (Tex.Cr.App.1989). Random or inconsistent application of state rules of procedural default will not be regarded as "adequate and independent state law grounds" so as to bar decision in federal habeas review. Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575, 585-86 (1988). Neither will rules of procedural default applied only when it is first determined that no constitutional right has been abridged. Coleman v. Thompson, 501 U.S. 722, at 740-44, 111 S.Ct. 2546, at 2559-2561, 115 L.Ed.2d 640, at 662-65 (1991). In short, the federal habeas courts need pay no greater deference to our state rules of procedural default than we do ourselves. By ruling on the merits in spite of perceived procedural default, the Court invites unnecessary litigation in the federal courts.[3]

II.
I am unaware of a single instance in which this Court has ever before cited a habeas *194 applicant for abuse of the writ, and then decided the merits of his claim anyway.[4] But that is what the plurality does today. Although it ultimately dismisses applicant's claim on the merits, the plurality also holds applicant has "waived" his Estelle v. Smith claim. For this proposition the plurality cites only Ex parte Carr, 511 S.W.2d 523 (Tex.Cr.App.1974).[5] In Carr, drawing from the federal analog, this Court did indeed hold that a habeas applicant's claims may be "waived or abandoned by his abuse of the writ of habeas corpus." Id., at 526.
But in Carr the Court expressly found that "petitioner's actions evince a deliberate and calculated effort to misuse and abuse the habeas corpus process."[6]Id. The plurality today makes no such finding. It is true that on the federal side, a habeas applicant may be cited for abuse of the writ not just for deliberately withholding a claim he could have brought in an earlier proceeding, but also if he fails to raise that claim earlier on account of "inexcusable neglect." In that event, he must show "cause and prejudice" in order to obtain review despite his apparent abuse of the writ. McCleskey v. Zant, 499 U.S. 467, at 493, 111 S.Ct. 1454, at 1470, 113 L.Ed.2d 517, at 544 (1991). It is also true, however, that on the federal side the Government has an obligation to plead abuse of the writ, and the applicant must be afforded an opportunity to show "cause and prejudice." Id., 499 U.S. at 494, 111 S.Ct. at 1470, 113 L.Ed.2d at 545. The State has not so pled in this proceeding. By declaring sua sponte for the first time now that applicant has "waived" his Estelle v. Smith claim, the plurality deprives him of any opportunity to explain his apparent neglect.[7] Perhaps the plurality means to adopt the federal model only selectively, and then to select only those facets of the model as benefit the State. But if the plurality does intend to adopt the federal model in full, depriving applicant of an opportunity to explain himself smacks of a violation of due process and due course of law.
In the premises, one would think that the Court would at least consider the possibility of remanding the cause to the trial court for a hearing. Of course, that is not necessary in this cause because in any event the plurality denies applicant relief on the merits. But that just brings me back to my original point: There is simply no purpose to be served by citing applicant for abuse of the writ, and *195 then disposing of the merits of his claim anyway.
Unlike the United States Supreme Court, this Court has no seasoned jurisprudence pertaining to abuse of the writ, nothing at all to compare to McCleskey v. Zant. Certainly we have not made it a habit to file and set post-conviction applications for habeas corpus in capital cases, only to turn around and cite the capital murder applicant for abuse of the writ. To suddenly do so today appears purely arbitrary.[8] Then to proceed (erroneously) to deny relief on the merits, as the Court does today, does absolutely nothing to clarify our state doctrine (such as it is) of abuse of the writ.[9] It just seems like spite, and I want no part of it.

III.
The plurality cites my separate opinions in Ex parte Goodman, 816 S.W.2d 383 (Tex.Cr. App.1991), Black v. State, 816 S.W.2d 350 (Tex.Cr.App.1991) and Ex parte Dutchover, 779 S.W.2d 76 (Tex.Cr.App.1989), for the proposition that the State has a legitimate interest in the finality of its hard-won criminal convictions. And indeed, this interest in the finality of convictions is one of the hall-marks of the Supreme Court's rationale in McCleskey v. Zant, supra, defining the parameters of abuse of the writ for purposes of federal habeas review of claims from state inmates. Were the Court sincerely interested in promulgating guidelines for an equally well-developed doctrine of abuse of the writ for state purposes, I might take notice.[10]
My whole purpose in writing separate opinions in Goodman, Dutchover, and many others of that ilk, was to try to provoke some interest in fashioning a principled doctrine of post-conviction habeas cognizability. See also, e.g., Ex parte McKay, 819 S.W.2d 478, at 487 & 489 (Tex.Cr.App.1990) (Clinton, J., concurring in opinion on original submission and dissenting to denial of State's motion for rehearing, respectively); Ex parte Sadberry, 864 S.W.2d 541, at 544-45 (Tex.Cr.App.1993) (Clinton, J., dissenting). According to that scheme, I would hold Estelle v. Smith error is not even cognizable in state post-conviction habeas corpus, since it does not render a death sentence "void" in any genuine sense, and it does not count as an "exceptional" constitutional claim as elsewhere I have defined that term. Ex parte Crispen, supra, at 108-09 (Clinton, J., concurring); Ex parte Dutchover, supra, at 79; Ex parte Goodman, supra, at 387-88. But the Court has not seen fit as yet to adopt this approach.
Instead, the Court continues to entertain any and all federal constitutional claims in Article 11.07 habeas corpus. See Ex parte Banks, 769 S.W.2d 539 (Tex.Cr.App.1989). Then, for the sake of vindicating the State's interest in finality of convictions, the Court generates ad hoc, niggling rules of procedural default, adding gratuitous layers to the already dense strata of our habeas corpus *196 jurisprudence. I object to the plurality citing my separate opinions as if they supported such an approach. They do not.

IV.
According to our caselaw, applicant's claim is cognizable in post-conviction habeas corpus under Article 11.07, supra. I agree with Judge Maloney that he is entitled to relief on the merits. While I have no aversion in principle to a doctrine of abuse of the writ, any such doctrine should be well-articulated, predictable in application, and even-handedly applied.[11] I cannot abide the plurality's arbitrary and pointless application of it here. I therefore dissent.
OVERSTREET, J., joins.
MALONEY, Judge, dissenting.
The majority holds Dr. Griffith's warnings to applicant were sufficient to comply with Estelle v. Smith. Majority at 192. Because I disagree with the majority's holding, I respectfully dissent.
In Estelle v. Smith, the Supreme Court held that admission of the psychiatrist's testimony at the penalty phase violated the defendant's Fifth Amendment rights because the defendant was not advised prior to the pretrial psychiatric examination that any statement he made could be used against him at the penalty phase. Estelle v. Smith, 451 U.S. 454, 468, 101 S.Ct. 1866, 1875-76, 68 L.Ed.2d 359 (1981). The majority holds that a warning is in compliance with Estelle v. Smith if it informs a defendant that his statements could be used against him in the courtroom. In essence, the majority concludes that a generic Miranda warning is sufficient. Because I believe Estelle v. Smith requires a specific warning that the defendant's statements could be used against him at the sentencing proceeding, I dissent.
The language in Estelle v. Smith does not support the majority opinion. If the Supreme Court had meant to require nothing more than generic Miranda warnings, (something it has never said would suffice in Miranda required situations) it would have been precise in so stating. The Supreme Court phrased the specific issue before it as follows:
... whether the admission of Dr. Grigson's testimony at the penalty phase violated respondent's Fifth Amendment privilege against self-incrimination because respondent was not advised before the pretrial psychiatric examination that he had a right to remain silent and that any statement he made could be used aginst him at a sentencing proceeding.
Smith, 451 U.S. at 461, 101 S.Ct. at 1872. The fact that the examination was used in an effort to obtain a verdict of death was emphasized by the Court. In reaching its holding that the defendant's Fifth Amendment rights were violated by the admission of the testimony, the Court observed:
... [respondent] was given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed that, accordingly, he had a constitutional right not to answer the questions put to him.
Id. at 467, 101 S.Ct. at 1875.
I have found no case which interprets Estelle v. Smith as the majority does. In Powell v. Texas, 492 U.S. 680, 681, 109 S.Ct. 3146, 3147-48, 106 L.Ed.2d 551 (1989), the Supreme Court stated:
In Estelle v. Smith, we held that a capital defendant's Fifth Amendment right against compelled self-incrimination precludes the state from subjecting him to a psychiatric examination concerning future dangerousness without first informing the defendant that he has the right to remain silent and that anything he says can be used against him at the sentencing proceeding.
See, e.g., Vanderbilt v. Collins, 994 F.2d 189, 197 (5th Cir.1993), (noting Fifth Amendment violation in Estelle v. Smith arose because defendant was not informed statements made *197 during his psychiatric examination could be used during penalty phase); Muniz v. Procunier, 760 F.2d 588, 589 (5th Cir.1985) (holding, under Estelle v. Smith, defendant's Fifth Amendment rights were violated because he did not receive his Miranda warnings "nor was he told that the responses to the doctor's questions might be used against him on issues governing his punishment"); White v. Estelle, 720 F.2d 415, 417 (5th Cir.1983) (finding Fifth Amendment violation based on Estelle v. Smith where defendant "not advised of his right to remain silent nor forewarned that any disclosure made during the mental examinations would be used against him as evidence, if convicted, in a penalty hearing that might result in a capital sentence"); Battie v. Estelle, 655 F.2d 692, 697 (5th Cir.1981) (stating "[i]n Smith, the Supreme Court held that the State's introduction into evidence of a ... psychiatrist's testimony to prove a capital defendant's future dangerousness, based on information obtained by a defendant in custody ... without a prior warning to the defendant that he has the right to remain silent and that any statement he made could be used against him at a sentencing proceeding," violated Miranda).
The majority fails to distinguish caselaw from this Court. In Wilkens v. State, 847 S.W.2d 547, 553 (Tex.Crim.App.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993), we held that psychiatric testimony as to a defendant's future dangerousness by experts appointed by a trial court to examine the defendant on the issues of competency and sanity was not admissible at the punishment phase of a capital murder trial absent some waiver by the defendant of his Fifth Amendment privilege against self-incrimination at the punishment phase, notwithstanding appellant's waiver of this privilege at the guilt/innocence phase. We noted that:
Three cases from the United States Supreme Court strongly suggest that admission of psychiatric testimony at the punishment phase, in particular concerning the issue of future dangerousness, requires a separate waiver or warning. Smith instructs that a defendant must be informed that what he says could be used against him at the punishment phase of a capital murder trial.
Id.
In Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex.Crim.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), we discussed the warnings which must be given to comply with the mandate of Estelle v. Smith:
Before any such psychiatric interview, the defendant's Fifth Amendment rights should be protected by warnings intended to serve as "procedural safeguards effective to secure the privilege against self-incrimination."... Such warning should inform the defendant that he has the right to remain silent and that his statements may later be used against him in court; if the defendant faces capital charges, this warning should specifically inform him that his statements could be used against him at the punishment stage of his capital murder trial, (citations omitted)(emphasis added)
As the above establishes, we have uniformly interpreted Estelle v. Smith as requiring more than a warning that a defendant's statement may be used against him in court.
In Estelle v. Smith, the Supreme Court recognized that this type of claim implicates the voluntary nature of a defendant's statement when it wrote
respondent's statements to Dr. Grigson were not `given freely and voluntarily without any compelling influences' and, as such, could be used as the State did at the penalty phase only if respondent had been appraised of his rights and had knowingly decided to waive them.
Smith, 451 U.S. at 469, 101 S.Ct. at 1876. Because applicant was not informed that his statements could be used against him at the punishment phase of his trial, it cannot be assumed that his statements were given freely and voluntarily. Applicant's statements were "unwittingly made without an awareness that he was assisting the State's efforts to obtain the dealth penalty." Id. at 466, 101 S.Ct. at 1875. I conclude that applicant did not waive his Fifth Amendment privilege as to the penalty phase of his trial, and therefore, *198 his Fifth Amendment privilege against self-incrimination was violated by Dr. Griffith's testimony at that phase concerning applicant's future dangerousness. Because the majority holds otherwise, I respectfully dissent.
BAIRD and OVERSTREET, JJ., join.

OPINION ON MOTION FOR REHEARING
McCORMICK, Presiding Judge, delivered the opinion of the court.
Applicant's motion for rehearing asserts this Court's opinion on original submission erroneously states the procedural history of this case. Applicant states he has filed only two habeas corpus applications and that what this Court's opinion on original submission characterized as applicant's first habeas corpus application was actually an emergency application for a stay of execution so applicant could later file his first habeas corpus application. We agree.
Applicant was convicted of capital murder in 1981 for killing a fourteen-year-old girl in the course of kidnapping her. Gardner v. State, 733 S.W.2d 195, 197-98 (Tex.Cr.App. 1987), cert.denied, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). Applicant received the death penalty at his 1981 trial. Id. Applicant claims in this proceeding the trial court erred in admitting Dr. Griffith's testimony into evidence at the punishment phase of applicant's 1981 trial on the issue of "future dangerousness." This testimony apparently was based on statements applicant made to Dr. Griffith and Dr. Grigson during a pretrial psychiatric examination. Applicant claims this evidence was admitted in violation of Miranda v. Arizona's "prophylactic rule of exclusion." See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Baker v. State, 956 S.W.2d 19 (Tex. Cr.App.1997). Applicant claims this is so because the warnings he received prior to the pretrial psychiatric examination failed to comply with Estelle v. Smith in that the warnings failed to specifically inform applicant that any statements he made could be used against him at the punishment phase of his capital murder trial. See Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[1]

I
Applicant committed the offense in 1980. Applicant's case was tried in February 1981. Estelle v. Smith was decided in May 1981. This Court disposed of applicant's direct appeal on April 8, 1987, and the United States Supreme Court denied applicant's petition for writ of certiorari on January 17, 1989.
Applicant filed his first habeas corpus application in this Court on June 13, 1990. This application contained the same Fifth Amendment claim based on Estelle v. Smith that applicant asserts in this proceeding. Applicant did not raise this claim on direct appeal. See Gardner, 733 S.W.2d at 201-03. However, on March 4, 1992, this Court denied relief on applicant's first habeas corpus application under the mistaken belief that the claim had been raised and decided adversely to applicant on direct appeal. Applicant filed this, his second, habeas corpus application in this Court on December 20, 1994.
The procedural history of this case reflects applicant waited almost eight years after Estelle v. Smith was decided before he asserted his Fifth Amendment claim based on Estelle v. Smith in his first habeas corpus application in June 1990. We note that during applicant's direct appeal, applicant expressly relied on Estelle v. Smith in support of his claim that admission of Griffith's testimony violated applicant's Sixth Amendment right to counsel. See Gardner, 733 S.W.2d at 201, *199 201-02.[2] Applicant also claimed on direct appeal "that the warnings given to him by the psychiatrists were inadequate" under the Fifth Amendment because the warnings operated as an "inducement." See Gardner, 733 S.W.2d at 202-03. This Court rejected these claims on direct appeal. See Gardner, 733 S.W.2d at 201-03.[3]
Under these circumstances, we still hold applicant procedurally defaulted his Fifth Amendment claim based on Estelle v. Smith. Cf. Ex parte Carr, 511 S.W.2d 523, 525 (Tex.Cr.App.1974). Applicant had an opportunity to raise this claim on direct appeal as the record from the direct appeal indicates applicant expressly relied on Estelle v. Smith to claim admission of Griffith's testimony violated his Sixth Amendment right to counsel. See Gardner, 733 S.W.2d at 201-202. There is no valid reason why applicant could not have raised on direct appeal the Estelle v. Smith claim he asserts in this proceeding. It is well-settled "that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal." Ex parte Goodman, 816 S.W.2d 383, 385 (Tex.Cr.App.1991); see Ex parte Groves, 571 S.W.2d 888, 890 (Tex.Cr.App.1978) (habeas corpus does not lie as a substitute for an appeal).
Applicant argues the record shows he "diligently" litigated his Estelle v. Smith claim. He speculates that had he raised this claim on direct appeal, this Court "could have refused to hear the claim on the basis that its resolution required extra record facts," since on original submission in this writ proceeding this Court relied on evidence (i.e., the evidence of the warnings Grigson also provided applicant prior to the psychiatric interview; see opinion on original submission) presented by the State in post conviction proceedings to determine that applicant was properly warned.
We disagree. Had applicant raised the claim on direct appeal, this Court, if it determined that Griffith's warnings were inadequate, could have granted relief on the basis that the record failed to show the prosecution carried its burden of proving the warnings applicant received were adequate. See Watson v. State, 762 S.W.2d 591, 600 (Tex.Cr. App.1988) (prosecution has burden to show that a defendant waived his privilege against self-incrimination). Or, since Estelle v. Smith had not been decided at the time of the psychiatric interviews, this Court could have abated applicant's direct appeal for an evidentiary hearing in the trial court on the warnings that Grigson also provided. Had applicant lost on this issue on direct appeal, he also could have petitioned the United States Supreme Court to review this Court's decision on the very issue he raises now 16 years after he could have raised it on direct appeal. This issue could have been resolved by January 1989 when the United States Supreme Court denied applicant's certiorari petition from his direct appeal.
Because the Estelle v. Smith claim applicant now asserts could have been raised and resolved during applicant's direct appeal, the State's (and society's) valid and legitimate interest in the finality of this 16-year-old conviction and sentence carries great weight in deciding whether to consider the merits of applicant's Estelle v. Smith claim now. Finality as well as other equitable considerations weigh in favor of deciding applicant procedurally defaulted the Estelle v. Smith claim he asserts in this proceeding. See Ex parte Drake, 883 S.W.2d 213, 215 (Tex.Cr. App.1994) (habeas corpus relief is underscored by elements of fairness and equity).
*200 Applicant's Estelle v. Smith claim cannot be characterized as an "exceptional" constitutional claim so as to excuse his procedural default. See Ex parte Goodman, 816 S.W.2d at 387 (Clinton, J., concurring) and other cases cited in Opinion on Original Submission. Applicant's Estelle v. Smith claim does not affect the factual question of applicant's guilt or innocence, the reliability of the jury's findings on the special issues at applicant's 1981 trial, or the "voluntary" nature of applicant's statements to the psychiatrists. No one is claiming applicant's statements to the psychiatrists resulted from torture or some other process that overbore applicant's will not to speak. Holding that applicant procedurally defaulted the Fifth Amendment claim he asserts now is not a "grievous wrong." Cf. Brecht v. Abrahamson, 507 U.S. 619, 634-37, 113 S.Ct. 1710, 1720-21, 123 L.Ed.2d 353 (1993) (historic meaning of habeas corpus is to afford relief to those whom society has "grievously wronged").
Applicant argues a sua sponte holding that he procedurally defaulted his Fifth Amendment claim based on Estelle v. Smith violates due process. We disagree. Applicant had an opportunity to raise this claim during the direct appeal of his conviction. See Gardner, 733 S.W.2d at 201-02.
Applicant's request for habeas corpus relief is denied.
MEYERS, J., not participating.
MANSFIELD, Judge, concurring on applicant's motion for rehearing.
I join the opinion of the Presiding Judge and write separately solely to address the issue of whether the warnings given to applicant by Dr. Griffith meet the requirements set forth by the Supreme Court in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).
Estelle v. Smith holds that, where an individual is in custody, it is a violation of the individual's Fifth Amendment right against self-incrimination for him to be subjected to a court-ordered pretrial psychiatric examination unless the examining psychiatrist first warns the individual that he has the right to remain silent and that anything he says may be used against him at trial. Simply put, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) applies to a court-ordered psychiatric examination of an individual who is in custody at the time of the examination. Furthermore, Estelle v. Smith holds that counsel for the individual to be examined by the psychiatrist must, under the Sixth Amendment, be informed in advance of the date of the examination.
As stated in my concurring opinion on original submission, it is my opinion there is nothing in Estelle v. Smith that requires the use of specific words in warnings that must be given to an individual facing a court-ordered psychiatric examination regarding, among other things, future dangerousness. Estelle v. Smith holds he must be told he has the right to remain silent, the right to consult counsel and the right to terminate the examination at any time. Furthermore, he must be told anything he says may be used for or against him at his trial and that the examination will cover, among other things, the issue of future dangerousness. As Estelle v. Smith is, essentially, an extension of Miranda v. Arizona, substantial compliance not specific or "magic" wordsis all that is required for warnings given pursuant thereto. See California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981).
In the present case, it is clear applicant was told by Dr. Griffith that anything he said could be used against him at his trial. It is obvious that the punishment phase is an integral part of trial, especially of a capital murder trial. Therefore, the warnings given applicant substantially comply with Estelle v. Smith's mandate that applicant be warned that anything he says during the psychiatric examination could be used against him at some point during his trial.[1],[2]
*201 It is my opinionregardless of whether this application is applicant's second or third applicationapplicant is not entitled to relief because he fails in his claim that the warnings provided him by Dr. Griffith did not comply with Estelle v. Smith. Accordingly, I would deny his motion for rehearing and his claim for habeas corpus relief.
With these comments I join the opinion of the Presiding Judge.
McCORMICK, P.J., joins.
OVERSTREET, Judge, dissenting on applicant's motion for rehearing.
The majority admits that the procedural history recited in its opinion on original submission was incorrectly stated, and that this Court erroneously denied relief on applicant's claim in his first habeas corpus application because it was under the mistaken belief that this claim had been raised and decided on direct appeal. Yet it continues to hold that applicant procedurally defaulted his Fifth Amendment Estelle v. Smith claim because he did not raise it on direct appeal. Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Cr.App.1998).
As on original submission, the majority continues to chastise applicant for not raising this claim on direct appeal. However it is very well-settled that it is appropriate to raise an Estelle v. Smith claim of constitutional magnitude via habeas corpus application even if it was not raised on direct appeal. Ex parte Chambers, 688 S.W.2d 483 (Tex.Cr. App.1984), cert. denied, 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985), and Ex parte Bravo, 702 S.W.2d 189, 192-93 (Tex.Cr. App.1985) (op. on reh'g). Yet the majority insists upon punishing applicant for not raising it on direct appeal. And it was applicant's lawyer who failed to raise the claim must applicant himself now suffer for his appellate counsel's failure?
We granted applicant's motion for rehearing on issues to reconsider the propriety of our holdings on original submission; yet we simply reaffirm one of our original holdings, i.e. that applicant procedurally defaulted his current claim by not raising it on direct appeal. With such a resolution, one has to wonder why we even bothered to grant rehearing in the first place?
As noted above, long-standing precedent provides for raising such an Estelle v. Smith claim for the first time via habeas corpus application in spite of not having raised it on direct appeal. Though applicant, via his appellate attorney, certainly could have sought to supplement his brief on direct appeal to add this current claim, there was nothing requiring him to do so. In fact, the caselaw approving the propriety of raising such claims via habeas corpus application could be seen as encouraging his attorney to do so; or at least such would not provide any inkling that he would later be punished and held to have procedurally defaulted the claim for doing so. Yet now, he is being punished for following that caselaw. It seems totally inappropriate to suddenly change the rules midstream to penalize applicant even though he used the habeas corpus process that has been held to be the proper vehicle ever since Estelle v. Smith was promulgated.
And since we granted rehearing on applicant's motion on a claim as to the merits, i.e. "The admission of Dr. Griffith's testimony at the punishment phase of trial violated [applicant]'s rights under the Fifth Amendment[,]" I will briefly address the merits of the claim. As on original submission, applicant avers that because of deficient warnings, Dr. Griffith's testimony at punishment violated applicant's rights under the Fifth Amendment of the United States Constitution.
During trial, Dr. Griffith described the warnings given to applicant in the following manner:
First of all, we did inform the Defendant, which he knew already thatwhat he was coming for, for a psychiatric examination; that this was ordered by Judge Hopkins. We informed him that a report would have to be sent to the Court stating our findings *202 so far as whether he was competent to stand trial, whether he, in our opinion, was sane or insane at the time of the alleged offense; that in the State of Texas, there is no confidentiality so that anything he might say could be used against him, or could be used for him at some later date in the courtroom ... [t]hat he had the right to remain silent, and was informed that he had the right to talk with his attorney about this, which he had done.
Applicant complains that the warnings given were deficient under Estelle v. Smith. In Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex.Cr.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), this Court discussed the warnings which must be given to comply with the mandate of Estelle v. Smith. There it was stated:
Before any such psychiatric interview, the defendant's Fifth Amendment rights should be protected by warnings intended to serve as "procedural safeguards effective to secure the privilege against self-incrimination." [citations omitted] Such warnings should inform the defendant that he has the right to remain silent and that his statements may later be used against him in court; if the defendant faces capital charges, this warning should specifically inform him that his statements could be used against him at the punishment stage of his capital murder trial. [Emphasis added.]
Likewise, in Wilkens v. State, 847 S.W.2d 547, 553 (Tex.Cr.App.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993), this Court stated:
Three cases from the United States Supreme Court strongly suggest that admission of psychiatric testimony at the punishment phase, in particular concerning the issue of future dangerousness, requires a separate waiver or warning. Smith instructs that a defendant must be informed that what he says could be used against him at the punishment phase of a capital murder trial. [Emphasis added.]
Because the examining doctors did not inform Wilkens that what he said could be used against him at the punishment phase of his trial, his Fifth Amendment privilege against self-incrimination was violated by the doctor's testimony at punishment concerning his future dangerousness. Wilkens, supra, 847 S.W.2d at 554.
In the instant case, the examining doctors did not inform applicant that what he said could be used against him at the punishment phase of his trial.[1] Therefore, pursuant to this Court's above-discussed holdings in Hernandez and Wilkens, applicant's Fifth Amendment privilege against self-incrimination was violated by Dr. Griffith's testimony at the punishment phase of trial concerning applicant's future dangerousness.
A waiver of the constitutional right to silence must be made knowing the potential life or death punishment consequences of that waiver. Applicant's waiver was secured without that requisite information.
*203 Because the majority chooses to continue to castigate applicant because his appellate attorney failed to file a claim on direct appeal that was not even required to be filed on direct appeal, I respectfully dissent.
BAIRD, J., joins.
NOTES
[1] This Court erroneously determined in that cause that the Estelle v. Smith claim had been raised by applicant and decided adversely to him on direct appeal.
[2] For example, in Ex parte Goodman, Judge Clinton wrote:

"Just as in the context of the law of contemporaneous objection, analysis of what is cognizable on collateral attack should be informed first and foremost by the State's legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous." Goodman, 816 S.W.2d at 387 (Clinton, J., concurring).
[3] Applicant claims we may not consider Grigson's testimony from the habeas evidentiary hearing in determining whether the collective warnings he received complied with Estelle v. Smith. He claims the question is whether the trial record reveals the State sustained its burden of proof to permit the introduction of the evidence obtained, and that a prerequisite to admissibility cannot be satisfied fifteen years after the fact.

We disagree. Applicant's case was tried before Estelle v. Smith was decided; therefore, it would have been impossible for the State to know with any certainty what the prerequisite to the admissibility of applicant's statements was. Moreover, applicant did not claim at trial the Fifth Amendment required the warnings the Supreme Court later decided the Fifth Amendment required in Estelle v. Smith. See Gardner, 733 S.W.2d at 202-03. And, applicant did not raise an Estelle v. Smith claim until 1990 approximately nine years after Estelle v. Smith was decided. When an applicant waits this long to raise an Estelle v. Smith claim, the State may establish the prerequisite to admissibility fifteen years after the fact.
[1] Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Although applicant did not raise an Estelle v. Smith objection at trial, he has not forfeited that claim for purposes of post-conviction habeas corpus review pursuant to Article 11.07, V.A.C.C.P., at least not on that account. As of the time of applicant's trial in early 1981, Estelle v. Smith had not been decided. Because it was a "right not recognized" at the time of his trial, applicant's Estelle v. Smith claim is preserved for habeas review even though he failed to raise it at that time. Ex parte Chambers, 688 S.W.2d 483 (Tex.Cr.App.1984) (Campbell, J., concurring).
[2] The plurality does not really mean to say that applicant "waived" his Estelle v. Smith claim, at least not in the constitutional sense of waiver, viz: the "intentional relinquishment or abandonment of a known right." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). What the plurality really means to say is that a habeas applicant can forfeit his ability to bring a claim by failing to raise it in an earlier writ application. See Marin v. State, 851 S.W.2d 275, at 279-80 (Tex.Cr.App.1993).
[3] In fairness I must concede that, should applicant argue in a petition for habeas corpus relief in federal court that he need not show "cause and prejudice" to excuse his procedural default, he will not, in all likelihood, prevail. It is reasonably clear that the plurality's holdings today are couched in the alternative. That is apparently enough to signal to the federal courts an "adequate" state law ground. See Sochor v. Florida, 504 U.S. 527, 534-35, n. *, 112 S.Ct. 2114, 2120, n. *, 119 L.Ed.2d 326, 338, n. * (1992). Still, there is no reason to invite litigation.
[4] We have considered the merits of a claim brought by an applicant who was previously cited for abuse of the writ. But even then, we have done so only when the claim was "based upon cases decided subsequent to the entry of the order" that cited him for abuse. See, e.g., Ex parte Bilton, 602 S.W.2d 534 (Tex.Cr.App.1980). That is not at all the same as what the plurality does today.
[5] In addition to its citation to Carr, the plurality signals the reader to "Cf." several provisions. Plurality op. at 191. The first is Article 11.071, § 5(a), V.A.C.C.P., but that is a statute that only governs petitions for habeas corpus filed after September 1, 1995, well after applicant's petition was filed. The second is Tex.R.App.Pro., Rule 52(a), a provision that by its express terms only governs "appellate review." The plurality does not explain in what way these inapplicable authorities lend analogous support to the proposition that a habeas applicant has "waived" an Estelle v. Smith claim by not raising it in a previous habeas application.
[6] The habeas court held a hearing on December 27, 1972 on an application for writ of habeas corpus Carr had filed. At that hearing the State pointedly asked Carr whether he had any claims to assert other than those contained in his writ application. In the words of our opinion in Carr, supra, at 524:

"He answered that he did, but repeatedly refused to disclose the nature of them. After giving answers that ranged from evasion to flat refusals to reveal the other grounds, [Carr] was allowed to collect his `papers' by the court during a short recess. However, at the conclusion of the recess, [he] again refused to disclose his other contentions."
The trial court denied relief. Subsequently Carr filed a second application for writ of habeas corpus, advancing a contention that "appear[ed] to be one of those which [Carr] refused to advance or discuss at the earlier hearing." Id. The habeas court recommended this Court deny Carr's second application without a hearing on the ground that he had abused the writ. That is what we did.
[7] Even in Carr we observed:

"It remains open to [Carr] to show that the contention urged here is not one of those which could have been urged at the hearing held December 27, 1972. Until such a showing is made, the ground urged is not entitled to consideration."
511 S.W.2d at 526 (emphasis added).
[8] The plurality's action today runs counter to the Court's longstanding practice, if not its policy, in post-conviction applications for writ of habeas corpus, a practice (or policy) that has heretofore applied to capital and non-capital inmates alike. As a practical matter we have always allowed an inmate to file any number of habeas applications, often raising the same contentions time after time, or raising new contentions that easily could have been incorporated in an earlier writ or writs. Typically he will not be cited for abuse of the writ until his repetition has severely tested the Court's patience. See, e.g., Ex parte Dora, 548 S.W.2d 392, at 393 (Tex.Cr.App.1977) (Court cited applicant for abuse of the writ for bringing same claims, not merely a second time, but "over and over again"). Given that background, the plurality's sudden policy of intolerance seems quite arbitrary indeed.
[9] It is hard to appreciate the plurality's sudden concern to develop the common law of abuse of the writ when the Legislature has so recently stepped into that arena. The 74th Legislature has promulgated a strict and comprehensive abuse of the writ scheme, applicable to both capital and non-capital applicants. Article 11.07 was amended to include what is essentially a statutory abuse of the writ policy for all non-capital writs filed after September 1, 1995. New Article 11.071 contains a similar provision governing capital writs. See Acts 1995, 74th Leg., ch. 319, §§ 1 & 2, eff. Sept. 1, 1995. Can the plurality possibly think its abrupt change in the longstanding abuse of the writ practice/policy, see n. 8, ante, will contribute meaningfully to the jurisprudence of the State? I would not blame Gardner for feeling (as undoubtedly he must today) that he has been unjustly singled out.
[10] At this juncture, of course, there is no reason to be concerned with developing a common law doctrine. See n. 9, ante.
[11] Moreover, it should have come a long time ago. At this late date there is no need for a common law doctrine. See n. 9, ante.
[1] It is not clear from the 1981 trial record whether Griffith's testimony was based on any statements applicant made to him during the psychiatric interview. Griffith testified that there was a sexual component to applicant's crime, that applicant was dangerous and would kill again, and that applicant showed no remorse during the psychiatric interview. Griffith did not testify about any statements applicant made to him about the crime in this case or that his opinions were based on his "discussion" with applicant. But see Estelle v. Smith, 451 U.S. at 458-60, 464-65 fn. 9, 101 S.Ct. at 1871, 1873-74 fn. 9 (psychiatrist testified on cross-examination about statements the defendant made to him about the crime and that his findings were based on his "discussion" with the defendant).
[2] This Court's file from applicant's direct appeal indicates applicant's original brief, which was filed on January 3, 1983, expressly relied on Estelle v. Smith in support of applicant's points of error one through seven. Applicant's first supplemental brief, which was filed on August 26, 1983, also expressly relied on Estelle v. Smith in support of applicant's supplemental arguments and authorities in support of his "grounds" of error one through seven.
[3] This probably explains why this Court on March 4, 1992, erroneously determined on applicant's first habeas corpus application that applicant's Fifth Amendment claim based on Estelle v. Smith had been decided adversely to applicant on direct appeal. However, as applicant stated in his motion for rehearing of our March 4, 1992, decision denying him relief on his first habeas corpus application, "the allegations presented" in applicant's first habeas corpus application were "legally and factually distinct" from the claims raised and decided on direct appeal.
[1] Specifically, applicant was told by Dr. Griffith the examination would cover three areas, competency, sanity and dangerousness, and "dangerousness" meant whether or not he represented a future threat to society. He was also told that anything he might say could be used against him or could be used for him at some later date in the courtroom.
[2] In a sense, the warnings provided applicant provided him extra protection by putting him on notice that anything he said could be used against him at any stage of his trial, not just the punishment phase.
[1] The State relies on this Court's decision in Bennett v. State, 742 S.W.2d 664 (Tex.Cr.App. 1987), vacated and remanded, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988), reaffirmed, 766 S.W.2d 227 (Tex.Cr.App.1989), cert. denied, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). In Bennett, Dr. Grigson specifically informed the defendant that the results of the examination "can be used against him[.]" Bennett v. State, 766 S.W.2d at 230. The continued vitality of Bennett is questionable since the more recent decisions of this Court, the United States Fifth Circuit Court of Appeals, and the United States Supreme Court all require that the defendant be specifically warned that the results of the pretrial psychiatric examination can be used against him at the punishment phase of trial. See Vanderbilt v. Collins, 994 F.2d 189, 198 (5th Cir.1993) (examining psychiatrist is obliged to inform the defendant "that the psychiatric examination c[an] be used against him at the sentencing phase on the issue of future dangerousness[.]") See also Bennett v. Collins, 852 F.Supp. 570, 574 (E.D.Tex. 1994)("In one of the stipulations [entered by the parties to the federal habeas corpus proceeding], respondent confessed error in the sentencing phase of [Bennett's] trial, agreeing that Dr. Grigson's testimony violated the standards set forth in Estelle v. Smith, ... [and][r]espondent further stipulated that the error was not harmless....") The federal habeas court in Bennett went on to observe that "[e]ven if respondent had not confessed error, [it] would have been obligated to grant [Bennett] relief based on [this] [reversible] error" because "Dr. Grigson failed to notify both [Bennett] and his attorney that he would be testifying as to future dangerousness during the sentencing phase." Id. at 574, citing Vanderbilt.